# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN VALENTIN,<br><br>       Plaintiff,<br><br>   v.<br><br>GRANT MERCANTILE AGENCY, INC.,<br><br>       Defendant.<br><br>_____/ | Case No. 1:17-cv-01019-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT BE GRANTED IN PART AND DENIED IN PART**<br><br>(Doc. 8)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I.     INTRODUCTION

Before the Court is an unopposed Motion for Default Judgment (the "Motion"), filed on October 23, 2017, by Plaintiff Evelyn Valentin ("Plaintiff") against Defendant Grant Mercantile Agency, Inc. ("Defendant").  (Doc. 8.)  The Court has reviewed Plaintiff's submissions and, for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion be GRANTED IN PART in the amount of $4,937.00

## II.     FACTUAL BACKGROUND

This action presents claims that Defendant, allegedly a debt collector, violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 *et*

*seq.* (Doc. 1 (the "Complaint"), ¶¶ 77-88.) According to the Complaint, which Plaintiff filed on July 31, 2017, Plaintiff incurred a medical debt with CFMG-Community Medical Providers ("CFMG-CMP") as a result of treatments she received for a back injury in 2014 at Peachwood Medical Group ("Peachwood"). (Doc. 1, ¶¶ 29, 31-34.) On April 10, 2015, CFMG-CMP sent Plaintiff a billing statement indicating that Plaintiff owed a balance of $877, less a pending insurance payment of $110, for a total debt of $767, and instructing Plaintiff to make checks payable to "Community Foundation Medical Group." (*Id.*, ¶¶ 33-37; *see also id.*, Ex. A.) On March 9, 2017, Plaintiff mailed a check in the amount of $767—purportedly the total amount owed—to CFMG-CMP. (*Id.*, ¶¶ 42-43.) To this point, Plaintiff had communicated about the debt with only CFMG-CMP and Peachwood. (*Id.*, ¶ 52.)

On March 13, 2017, Plaintiff received a letter from Defendant—allegedly her first communication with Defendant about the debt—dated March 3, 2017, in which Defendant indicated that it was attempting to collect a debt. (*Id.*, ¶¶ 44-46; *see also id.*, Ex. C.) The letter specifically stated, "Your account is assigned to Grant Mercantile Agency, a collection agency," and it provided the following reference information: "Reference: CMP/Community Foundation Med 188134." (*Id.*, ¶¶ 50-51; *see also id.*, Ex. C.) The letter further stated that Plaintiff owed a principal amount of $877, and $206.15 in interest, totaling $1,083.15. (*Id.*, ¶ 62; *see also id.*, Ex. C.)

The Complaint alleges that Defendant sent three more letters to Plaintiff in an attempt to collect the debt. In a letter sent on March 20, 2017, according to the Complaint, Defendant acknowledged the payment of $767 that Plaintiff made on March 9, 2017. (*Id.*, ¶¶ 67, 69.) However, the letter indicated that Plaintiff owed a remaining balance of $110 toward the principal debt, and $208.58 in interest. (*Id.*, ¶¶ 69.) In a letter sent on March 29, 2017, Defendant further acknowledged the $110 payment made by Plaintiff's health insurance company, but Defendant stated that Plaintiff owed a remaining balance of $209.09 in interest. (*Id.*, ¶¶ 70, 72; *see also id.*, ¶¶ 39-41.) In a final letter, which the Complaint alleges Defendant sent on April 27, 2017, Defendant maintained that Plaintiff owed a remaining balance of $209.09. (*Id.*, ¶¶ 73-74.)

Plaintiff alleges that the letters sent by Defendant violate sections 1692g(a)(2), 1692e,

1692e(2)(A), and 1692f(1) of the FDCPA, and section 1788.13(e) of the Rosenthal Act. (*See generally id.*, ¶¶ 77-88.) The Complaint seeks an award of statutory damages, actual damages, costs of suit, attorney's fees, and pre- and post-judgment interest. (*See generally id.*)

Defendant was served with the Complaint on August 26, 2017, (Doc. 4), but, to date, Defendant has failed to respond. Plaintiff requested that the Clerk of the Court enter default against Defendant (Doc. 5), which the Clerk entered on September 28, 2017 (Doc. 6). On October 23, 2017, Plaintiff filed a Motion for Default Judgment, requesting default judgment against Defendant in the amount of $6,010.[1] (Doc. 8 at 1; *see also generally* Doc. 12.) Defendant has failed to respond to the Motion.[2] Plaintiff's Motion for Default Judgment is fully briefed and ready for disposition.[3]

## III.   DISCUSSION

### A.   Legal Standard

The Federal Rules of Civil Procedure permit a court-ordered default judgment following the entry of default by the Clerk of the Court. *See* Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980). That is, a defendant's default by itself does not entitle a plaintiff to such a judgment. *See id.* (citations omitted).

In determining whether to enter default judgment, the Court should consider the following so-called *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

---

[1] The requested amount includes $1,000 in statutory damages pursuant to 15 U.S.C. § 1692(k)(a)(2)(A), $1,000 in statutory damages pursuant to Cal. Civ. Code § 1788.30(b), $3,500 in attorney's fees, and $510 in costs. (Doc. 8 at 2; Doc 12, ¶¶ 12-14.)

[2] On October 24, 2017, after Plaintiff filed her Motion for Default Judgment (Doc. 8), the Court entered an order setting a briefing schedule for the motion, and directing Plaintiff to "file on the Court's docket proof of service of this minute order upon Defendant at its current or last known address by no later than October 27, 2017." (Doc. 9.) The Court notes that Plaintiff complied with the order by filing a Notice of Service on October 24, 2017, indicating that she served the Court's order on Defendant. (Doc. 10.)

[3] In an order entered on December 8, 2017, the undersigned directed Plaintiff to supplement the record on issues relating to its request for attorney's fees. (Doc. 11.) Plaintiff filed its responsive brief addressing these issues on December 15, 2017. (Doc. 12.)

Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

For the reasons set forth below, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendant.

**B.      Analysis of the *Eitel* Factors**

**1.      Factor One: Plaintiff Will Be Prejudiced if Default Judgment is Not Granted.**

The first *Eitel* factor favors entry of default judgment where "the plaintiff would suffer prejudice if default judgment is not entered." *Lyon v. Bergstrom Law, Ltd.*, No. 1:16-cv-00401-DAD-SKO, 2017 WL 2350447, at *3 (E.D. Cal. May 31, 2017) (quoting *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *2 (E.D. Cal. Nov. 25, 2015). Defendant was properly served on August 26, 2017—almost four months ago—but has failed to appear and defend itself. The litigation has thereby stalled, potentially prejudicing Plaintiff by leaving her with no recourse to recover on her claims. That, by itself, is sufficient for a finding that this factor weighs in favor of entering default judgment. *See, e.g.*, *Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

**2.      Factors Two and Three: Plaintiff's Claims that Defendant Violated the FDCPA and Rosenthal Act Are Meritorious and the Complaint is Sufficient.**

Under the second and third *Eitel* factors, the Court considers the general sufficiency of the complaint as well as the merits of its substantive claims. *HICA Educ. Loan Corp. v. Warne*, No. 11-cv-04287-LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012). *See generally U.S. ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 1:12-cv-1287-AWI-BAM, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013) (addressing the second and third *Eitel* factors "together because of the relatedness of the two inquiries"). These factors "together . . . require that a plaintiff state a claim on which the plaintiff may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002); *see also Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001).

The Complaint asserts six causes of action: (1) failure to meaningfully convey the identity of the current creditor in violation of § 1692g(a)(2) of the FDCPA; (2) use of false, misleading, or deceptive means in connection with the collection of a debt, and attempt to collect an inaccurate

amount of debt, in violation of § 1692e of the FDCPA; (3) falsely representing the character, amount, or legal status of the debt in violation of § 1692e(2)(A) of the FDCPA; (4) attempt to collect an amount incidental to the principal obligation that was not expressly permitted by the agreement crediting the debt in violation of § 1692f(1) of the FDCPA; and (5) false representation that the debt may be increased by interest or other charges in violation of § 1788.13(e) of the Rosenthal Act. (*See generally* Doc. 1, ¶¶ 77-88.) To state a claim under the FDCPA, a plaintiff must show (1) the plaintiff is a "consumer," (2) the defendant is a "debt collector," and (3) the defendant committed some act or omission in violation of the FDCPA. *See* 15 U.S.C. § 1692a(3)-(6); *see also Allmendinger v. Oxford Law, LLC*, No. 2:14-cv-1990-KJM-EFB, 2016 WL 146230, at *2 (E.D. Cal. Jan. 13, 2016). FDCPA violations also constitute violations of the Rosenthal Act. *See* Cal. Civ. Code § 1788.17 (incorporating the majority of the FDCPA); *see also Esget v. TCM Fin. Servs. LLC*, No. 1:11-cv-00062-AWI-BAM, 2014 WL 258837, at *5 (E.D. Cal. Jan 23, 2014) ("[C]laims asserted under the FDCPA constitute violations of the RFDCPA."). These laws aim to protect consumers from unfair and deceptive debt collection practices. *See* 15 U.S.C. § 1692; *see also Lyon*, 2017 WL 2350447, at *4 (quoting *Gonzales v. Arrow Fin. Servs., Inc.*, 660 F.3d 1055, 1060 (9th Cir. 2011)).

At this stage—on a motion for entry of default judgment following entry of default by the Clerk of the Court—the Court must accept as true the well-pleaded facts in the complaint. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). Necessary facts which are not contained in the complaint, or are legally insufficient, however, will not be established by the Clerk's entry of default. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

As to the first and second elements required under the FDCPA, the Complaint adequately pleads Plaintiff's status as a consumer, Defendant's status as a debt collector, and the status of the debt at issue. (Doc. 1, ¶¶ 18-23); *see also* 15 U.S.C. §§ 1692a(3) (defining the term "consumer"), 1692a(6) (defining the term "debt collector"), 1692a(5) (defining the term "debt"). The Court will now turn to the third element—determining whether Plaintiff has sufficiently alleged that Defendant committed some act or omission in violation of the FDCPA and the Rosenthal Act.

//

5

### a. Allegation of Defendant's Failure to Identity the Current Creditor of the Debt States a Violation of the FDCPA and Rosenthal Act.

In its initial communication with Plaintiff—the March 3, 2017 letter—Defendant indicated that Plaintiff's medical debt had been "assigned to Grant Mercantile Agency, a collection agency," and the letter provided the following reference information: "Reference: CMP/Community Foundation Med 188134." (Doc. 1, Ex. C.)  In the Complaint, Plaintiff contends that the March 3, 2017 letter "fail[ed] to meaningfully convey the identity of the current creditor in its . . . initial written correspondence." (*Id.*, ¶ 78.)  These allegations sufficiently state violations of §§ 1692g(a)(2) and 1692e of the FDCPA, as well as the Rosenthal Act.

"The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., Inc.*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). "The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Id.* at 1060–61. "The FDCPA does not ordinarily require proof of intentional violation, and is a strict liability statute." *Id.* (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011)).

### i. Section 1692g(a)(2)

In particular, Plaintiff contends that Defendant's March 3, 2017 letter violated § 1692g(a)(2) by failing to (1) clearly identify the name of the creditor to whom the debt was owed, (*Id.*, ¶ 49); (2) identify "CMP/Community Foundation Med" and its relationship to the debt (*Id.*, ¶ 53-54); and (3) explain who assigned the debt to Defendant, and whether, as a result of such assignment, Defendant was the current creditor of the debt, (*Id.*, ¶ 60).  Plaintiff alleged that as a result of these purported problems with Defendant's March 3, 2017 letter, she continued to believe that CFMG-CMP was the creditor of the debt, and that CFMG-CMP was a separate and different entity from "CMP/Community Foundation Med." (*Id.*, ¶ 53.)  A review of Plaintiff's allegations and of the March 3, 2017 letter shows that Defendant failed to provide Plaintiff with sufficient

notice of the identity of the current creditor.

Section 1692g(a)(2) of the FDCPA requires debt collectors, within five days of an "initial communication" concerning a debt, to "send the consumer a written notice containing . . . the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). The Ninth Circuit recently noted that "[t]he Senate Report projected that § 1692g would 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid,'" and that "Congress added the validation of debts provision specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1080 (9th Cir. 2016) (quoting S. Rep. No. 95-382 at 4).

Although the Complaint, here, alleges that Plaintiff *believed* at the time that CFMG-CP was the current creditor of the debt as of March 3, 2017, the Complaint is silent as to who *in fact* was the current creditor as of March 3, 2017. To the extent that Defendant was the current creditor to whom the debt was owed as of March 3, 2017, the March 3 letter did not adequately identify Defendant as the current creditor. The March 3, 2017 letter names Defendant—"Grant Mercantile Agency"—in the upper left-hand corner, in the body, and in the payment section, but it merely describes Defendant as a "collection agency" and a "debt collector," and it indicates vaguely that the debt was "assigned to Grant Mercantile Agency." (Doc. 1, Ex. C.) In other words, nowhere in the March 3, 2017 letter is Defendant clearly identified as the current creditor of the debt. *See Dix v. Nat'l Credit Systems*, No. 2:16-cv-3257-HRH, 2017 WL 4865259, at *2 (D. Ariz. Oct. 27, 2017) ("Merely including the current creditor's name in a debt collection letter, without more, is insufficient to satisfy 15 U.S.C. § 1692g(a)(2).") (quoting *McGinty v. Professional Claims Bureau, Inc.*, No. 15-cv-4356 (SFJ) (ARL), 2016 WL 6069180, at *4 (E.D.N.Y. Oct. 17, 2016))); *see also Suellen v. Mercantile Adjustment Bureau*, LLC, No. 12-cv-00916 NC, 2012 WL 2849651, at *6 (N.D. Cal. June 12, 2012) (observing that courts have held that "[m]erely naming the creditor without identifying it as the current creditor" is not sufficient for purposes of § 1692g(a)(2)); *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005) (holding that a debt collector violated § 1692g(a)(2) where "[t]he name of the

7

creditor . . . appear[ed] in the subject line of the Collection Letter, but [was] not identified as a creditor").

Even to the extent that CFMG-CMP was the current creditor of Plaintiff's medical debt as of March 3, 2017, the March 3, 2017 letter did not adequately identify CFMG-CMP as such. Rather, the letter lists "CMP/Community Foundation Med"—presumably CFMG-CMP—in the "reference" line, but it does not identify this entity as the current creditor. *See*, *e.g.*, *Dix*, 2017 WL 4865259, at *3 (finding that defendant's collection letter, which named the current creditor without identifying that such creditor was the current creditor, did not satisfy § 1692g(a)(2)). As such, the Complaint sufficiently alleges a violation of § 1692g(a)(2).

### ii.     Section 1692e

Plaintiff contends that Defendant's failure to identify the current creditor of the debt also violated § 1692e of the FDCPA. (Doc. 1, §§ 79-82.) Section 1692e of the FDCPA broadly prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector's liability under § 1692e of the FDCPA is an issue of law." *Forkum v. Co-Operative Adjustment Bureau, Inc.*, 44 F. Supp. 3d 959, 962 (N.D. Cal. 2014) (citing *Gonzales*, 660 F.3d at 1061). "'In assessing FDCPA liability, [courts] are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.'" *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (quoting *Donohue*, 592 F.3d at 1034). "In other words, a debt collector's false or misleading representation must be 'material' in order for it to be actionable under the FDCPA." *Id.* (quoting *Donohue*, 592 F.3d at 1033). "Immaterial errors, by definition, would not frustrate a debtor's ability to intelligently choose an appropriate response to a collection effort." *Davis v. Hollins Law*, 832 F.3d 962, 964 (9th Cir. 2016) (citation omitted).

"[I]t is well established that '[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Id.* (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir.2006)). However, the Ninth Circuit has agreed with the Sixth and Seventh Circuits in concluding that "false but non-

8

material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir.2010).

Here, as discussed above, Defendant's March 3, 2017 letter failed to provide Plaintiff with sufficient notice of the identity of the current creditor. *See supra* III.B.2.a.i. Courts have routinely found debt collection letters to be deceptive where the letter fails to clearly identify the current creditor of the debt. *See*, *e.g.*, *Tourgeman*, 755 F.3d at 1120-21 (finding, among other things, that defendant's failure to identify the original or current creditor violated § 1692e); *cf.*, *e.g.*, *Chyba v. Bayview Loan Servicing, LLC*, No. 14cv1415 BEN (BLM), 2016 WL 2593979, at *4 (S.D. Cal. May 3, 2016) (finding no violation of § 1692e where debt collection letter specifically identified The Bank of New York Mellon as the current creditor); *Gold v. Midland Credit Mgmt., Inc.*, 82 F.Supp. 3d 1064, 1076 (N.D. Cal. Mar. 10, 2015) (finding no violation where the collection letter "clearly identifie[d] HSBC as the 'Original Creditor' and Midland Funding as the 'Current Owner'"); *Quicho v. Mann Bracken, LLC*, No. C07-3478 BZ, 2007 WL 278971, at *1 (N.D. Cal. Sept. 25, 2007) (finding no violation of § 1692e where the current creditor was clearly identified in debt collection letter). Accordingly, as Defendant's March 3, 2017 letter failed to identify the current creditor of Plaintiff's medical debt, the Complaint as to this allegation sufficiently states a violation of § 1692e. As such, the Complaint as to this allegation also states a violation of the Rosenthal Act because FDCPA violations necessarily constitute violations of the Rosenthal Act. *See* Cal. Civ. Code § 1788.17 (incorporating the majority of the FDCPA); *see also Esget*, 2014 WL 258837, at *5 ("[C]laims asserted under the FDCPA constitute violations of the RFDCPA.").

### b. Allegation of Defendant's Misstatement as to Interest Fees Owed States a Violation of the FDCPA and the Rosenthal Act.

Plaintiff alleges that Defendant further violated §§ 1692e and 1692e(2)(A) of the FDCPA by misstating the amount of debt owed by Plaintiff, and that these misstatements violated § 1692f(1) of the FDCPA as well. (*See* Doc. 1, ¶¶ 82-86.) In particular, the Complaint avers that Defendant's four collection letters indicated that, in addition to the principal debt owed, Plaintiff owed interest fees on the debt. (*Id.*, ¶¶ 62, 67, 69-70, 72-74; *see also id.*, Ex. C.) Under the

FDCPA, a debt collector may collect interest charges on a debt where the charges are "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). An interest charge which violates § 1692f of the FDCPA also necessarily violates § 1692e(2)(10). *See Newman v. Checkrite Cal., Inc.*, 912 F.Supp. 1354, 1367 (E.D. Cal. 1995).

California law governs the interest charges here, rather than any contractual agreement between the parties, as Plaintiff's Complaint does not state whether the contract creating the debt expressly allowed interest charges.[4] *See* 15 U.S.C. § 1692f(1). California law allows recovery of prejudgment interest on debts under certain circumstances. Cal Civ. Code § 3287(a). "[P]rejudgment interest under section 3287(a) becomes available as of the day the amount at issue becomes 'calculable . . . mechanically, on the basis of uncontested and conceded evidence,' and it is available 'as a matter of right,' rather than at the discretion of the court." *Diaz v. Kubler Corp.*, 785 F.3d 1326 (9th Cir. 2015) (quoting *Leff v. Gunter*, 33 Cal.3d 508 (1983)).

As to §§ 1692e, 1692e(2)(A) and 1692f(1) of the FDCPA, the Complaint sufficiently states that Defendant violated the FDCPA and Rosenthal Act. At the time Defendant sent its collection letters to Plaintiff, Defendant was not able, under California law, to seek to collect interest on the debt, as Plaintiff's debt had not yet become calculable. *See Diaz*, 785 F.3d at 1329 (stating that a collection letter can seek to collect interest fees on a debt so long as "the debt in question was certain or capable of being made certain at that time, even if [plaintiff] had not yet obtained a judgment from a court"); *see also Leff*, 33 Cal.3d at 519 (debt is "calculable," and may therefore be subject to interest fees, "where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage").

Plaintiff disputed the principal amount of debt owed. The Complaint alleges, for instance, that the March 3, 2017 letter "fail[ed] to account for the payments by Plaintiff's insurance and the $56 payment made by Plaintiff," and that the March 20, 2017 letter failed to account for a $110 payment that was made" by Plaintiff. (Doc. 1, ¶¶ 65, 68-71.) Defendant was not yet permitted,

---

[4] Although the Complaint alleges that the original billing statement from CFMG-CMP contained no interest fees, the billing statement was not the contract which created the debt, nor would the mere omission of interest fees indicate that interest fees are not allowed for this particular debt.

under the FDCPA, to collect interest fees on the debt *because Plaintiff was disputing the debt*, and, therefore, the debt was not "calculable." *Cf.*, *e.g.*, *Youssofi v. CMRE Fin. Servs., Inc.*, No. 15cv2310 JM(WVG), 2016 WL 4098312, at *3-4 (S.D. Cal. Aug. 2, 2016) (finding that defendant's effort to collect interest charges on debt did not violate the FDCPA because Plaintiff *did not dispute* the debt owed, and, therefore, the debt was "calculable"); *Provo v. Rady Children's Hospital-San Diego*, No. 15cv0081 JM(BGS), 2015 WL 3648845, at *3 (S.D. Cal. June 11, 2015) (finding that interest fees sought prior to a judgment for the debt did not violate the FDCPA). As such, Defendant's alleged attempt to collect interest fees on Plaintiff's alleged debt constitutes a violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692f(1). *See Newman*, 912 F.Supp. at 1367 (interest charge which violates § 1692f of the FDCPA also violates § 1692e(2)(10));

Accordingly, the Complaint sufficiently states a violation of §§ 1692e, 1692e(2)(A), and 1692f(1) of the FDCPA. The Complaint sufficiently states a violation of the Rosenthal Act as well, because FDCPA violations necessarily constitute violations of the Rosenthal Act. *See* Cal. Civ. Code § 1788.17 (incorporating the majority of the FDCPA); *see also Esget*, 2014 WL 258837, at *5 ("[C]laims asserted under the FDCPA constitute violations of the RFDCPA."). *See* Cal. Civ. Code § 1788.17 (incorporating the majority of the FDCPA). Therefore, *Eitel* factors two and three weigh in favor of entering default judgment

### 3. Factor Four: The Relatively Small Sum of Money at Stake Favors Default Judgment.

The fourth *Eitel* factor, the sum of money at stake in the action, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $6,010.00, which includes statutory damages, attorney's fees, and costs. (Doc. 8 at 2.) This is not a large sum of money, relatively, nor does it appear unreasonable, subject to the modifications set forth below.

//

### 4. Factor Five: No Dispute Over Material Facts.

With regard to this *Eitel* factor, no genuine issues of material fact are likely to exist because the allegations in the Complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to contradict the well-pleaded allegations in the Complaint. Accordingly, this factor favors entry of default judgment.

### 5. Factor Six: No Evidence that Default Was Due to Excusable Neglect.

Defendant has failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. The Court has no evidence before it establishing that Defendant's failure to participate in the litigation is due to excusable neglect. This factor therefore weighs in favor of granting default judgment.

### 6. Factor Seven: Strong Policy Favoring Decisions on the Merits.

This factor inherently weighs strongly against awarding default judgment in every case. This factor is outweighed, however, by the other factors that favor granting default judgment.

## C. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports entry of a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff. In other words, although the Court must accept Plaintiff's allegations as true on a motion for default judgment, Plaintiff must still prove all damages sought in the Complaint. *See Televideo Sys. Inc.*, 826 F.2d at 917-18. The relief sought "must not differ in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c).

### 1. Plaintiff is Entitled to Modified Statutory Damages.

The Complaint seeks the maximum statutory damages in the amount of $2,000. (Doc. 1, ¶¶ 77-88.) The FDCPA and the Rosenthal Act provide for, among other things, a maximum statutory damages amount of $1,000, respectively, for unlawful debt collection activities. *See* 15 U.S.C. § 1692k(a)(2)(A); *see also Brablec v. Paul Coleman & Assocs., P.C.*, No. S-08-1843-MCE-GGH, 2010 WL 235062, at *2 (E.D. Cal. Jan. 21, 2010) (citing *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1178 (9th Cir. 2006) and *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1238 (C.D. Cal. 2007)). In determining the amount of statutory liability, courts "shall consider . . . the frequency and persistence of noncompliance by the debt

collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Defendant's alleged violations do not warrant the maximum statutory damages amount. The alleged violations stem from four collection letters sent to Plaintiff over a period of approximately eight weeks, which purportedly failed to identify the current creditor of the debt and misstated the amount of debt owed. (*See generally* Doc. 1; *see also supra* Part II.) While Defendant's noncompliance—sending four collection letters over an eight-week period—was persistent and frequent, Plaintiff does not allege facts suggesting that such noncompliance was malicious or willful. *See, e.g.*, *Sosa v. Crowning Point Sols., LLC*, No. 2:15-cv-2458-JAM-EFB, 2016 WL 3218187, at *3 (E.D. Cal. June 9, 2016) (finding that numerous communications combined with aggravating circumstances—such as threats or communications to third parties— warrant the maximum statutory damages amount).

Accordingly, the undersigned recommends that Plaintiff be awarded $600 in statutory damages under the FDCPA, and $600 in statutory damages under the Rosenthal Act, for a total statutory damages award of $1,200. *See, e.g.*, *Lyon v. Bergstrom Law, Ltd.*, No. 1:16-cv-00401-DAD-SKO, 2017 WL 2350447, at *10 (E.D. Cal. May 31, 2017) ("find[ing] that [a] single noncompliant communication . . . absent any aggravating circumstances, warrants a reduced FDCPA damage amount of $250."); *Neves v. Benchmark Recovery, Inc.*, No. 15-cv-01759-LHK, 2015 WL 6957525, at *4 (N.D. Cal. Nov. 11, 2015) (awarding $250 in statutory damages under the FDCPA for "violations [that] stem from a single . . . collection letter"); *Neves v. Kraft*, No. 13-cv-04724-LHK, 2014 WL 2154107, *3 (N.D. Cal. May 22, 2014) (awarding $350 in statutory damages for a "single occurrence of wrongdoing"); *Silva v. Jason Head, PLC*, No. 09-cv-05768-LHK, 2010 WL 4593704, *5 (N.D. Cal. Nov. 4, 2010) (awarding only $500 in statutory damages, despite threats by the defendant in the subject communication, because the defendant's noncompliance was infrequent); *Jamal v. Thompson & Associates, P.C.*, No. C-09-4249 MHP (BZ), 2010 WL 678925, at *4 (N.D. Cal. Feb. 25, 2010) ("since the violation occurred only once and plaintiff provides no evidence to suggest that such noncompliance was intentional, I recommend that plaintiff be awarded $300 under the FDCPA and $300 under the RFDCPA");

*Mejia v. Marauder Corp.*, No. C06-00520 HRL, 2007 WL 806486, at *11 (N.D. Cal. Mar. 15, 2007) (awarding $250 in statutory damages where there was "only a single collection letter at issue").

**2.      Plaintiff is Entitled to Modified Attorney's Fees and Costs.**

The Complaint further requests an award for attorney's fees and costs, (*see generally* Doc. 1, ¶¶ 77-88), which both the FDCPA and the Rosenthal Act provide to a prevailing plaintiff.  15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c).

**a.      Legal Standard**

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley*, 461 U.S. at 461 (1983)].  The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed.  *See Hensley*, 461 U.S. at 433.

> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary."  *Id.* at 434.  Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar.  [Footnote omitted]  *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation).  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high.  *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

The reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 895; *see also Shirrod v. Office Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The relevant legal community is the forum where the district court sits. *Shirrod*, 809 F.3d at 1086. The fee applicant bears the burden of showing that the requested rates are "in line with those prevailing in the community." *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Camacho*, 523 F.3d at 980); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.")

In *Trujillo v. Singh*, a recent case brought pursuant to the Americans with Disabilities Act, the Court formulated a method for reasonably determining the prevailing rates in Fresno. No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *2-3 (E.D. Cal. May 8, 2017). The Court considered the prevailing rates compiled in the so-called Laffey Matrix,[5] which provides hourly rates for attorneys in the Washington, D.C. and Baltimore areas, and employed a method for adjusting those rates to the Fresno market.[6]

//

---

[5] The Laffey Matrix is a widely recognized compilation of attorney and paralegal rate data used in fee shifting cases, which is regularly prepared and updated by the Civil Division of the United States Attorney's Office for the District of Columbia. *See* https://www.justice.gov/usao-dc/file/889176/download (last visited Oct. 31, 2017). The Laffey Matrix provides, among other things, prevailing hourly rates for attorneys in the Washington, D.C. and Baltimore areas categorized by the attorney's years of experience. Courts in this district generally have found the Laffey Matrix to be unhelpful because of its specific application to the Washington, D.C. and Baltimore markets, and not the Fresno market. *See, e.g., Fitzgerald v. Law office of Curtis O. Barnes*, No. 1:12-cv-00071-LJO-GSA, 2013 WL 1627740, at *3 (E.D. Cal. Apr. 15, 2013); *see also findings and recommendations adopted*, 2013 WL 1896273 (E.D. Cal. May 6, 2013) (finding Laffey Matrix inapposite for determining Fresno rates).
[6] Using the Bureau of Labor statistics, the Court compared the mean wage estimate for attorneys in the Washington, D.C. and Baltimore areas (without regard for years of experience) to the mean wage estimate for attorneys in Fresno to arrive at the difference in estimated attorneys wages estimates between those markets. *See Singh*, 2017 WL 1831941, at *2-3; *see also* https://bls.gov/oes/current/oessrcma.htm (last visited Oct. 31, 2017). The Court determined that the mean wage estimate for attorneys in the Fresno market was 30.11% lower than the mean wage estimate for attorneys in the Washington D.C. and Baltimore market.

### b.     Analysis

Plaintiff seeks an award of $3,500 for total billable time spent on the case as well as $510 for costs.  (Doc. 8 at 1; Doc. 12, ¶¶ 12-14.)  Specifically, Plaintiff requests (1) $1,380.00 for 4.6 hours of work expended by Elliot Rosenberger, Esq., at an hourly rate of $300; (2) $2,310.00 for 8.4 hours of work expended by Joseph Panvini, Esq,, at an hourly rate of $275; (3) $553.50 for 4.1 hours of work expended by paralegal Tremain Davis; and (4) $513.00 for 3.8 hours of work expended by paralegal Zac Landis.  (Doc. 12, ¶¶ 13-14; Doc. 12-2.)  Although the total time billed amounts to $4,756.50, Plaintiff has "reduced [the total time billed] from $4,756.50 to $3,500.00, using billing discretion."  (Doc. 12, ¶ 14.)

### i.     Hourly Rates

With regard to the hourly rate to be charged for Plaintiff's counsel, Mr. Rosenberger, Plaintiff requests $300.  (Doc. 12, ¶ 4.)  Plaintiff asserts, through Mr. Rosenberger's declaration, that Mr. Rosenberger graduated from law school in 2014, is the founding partner of the law firm, which represented Plaintiff in this matter, and, presumably, that Mr. Rosenberger has approximately four years of practice experience in FDCPA litigation.  (Doc. 12-2, ¶ 3.)

Mr. Rosenberger asserts that an hourly rate of $300 is reasonable for an attorney with his experience, and he relies heavily on this Court's order in *Davis v. Hollins Law*, 25 F. Supp.3d 1292 (E.D. Cal. June 12, 2014).  However, *Davis* is inapposite.  The Court in *Davis* departed from this Court's prior decisions by (1) relying on the United States Consumer Law Attorney Fee Survey Report (the "Survey Report"), instead of the Laffey Matrix, to determine the prevailing hourly rate for an attorney in the Fresno area, and (2) setting hourly rates not according to those prevailing in the Fresno market, but rather according to those prevailing in the market where the attorneys' firm is located.[7]  *See, e.g.*, *Singh*, 2017 WL 1831941, at *2-3 (using the prevailing rates compiled on the Laffey Matrix, adjusted to the Fresno market, to determine reasonable hourly rates); *Fitzgerald v. The Law Office of Curtis O. Barnes,* No. 1:12–cv–00071–LJO–GAS, 2013 WL 1627740, 2013 U.S. Dist. LEXIS 53642 (E.D.Cal. Apr. 15, 2013) ("The Court finds [the

---

[7] In particular, the Court in *Davis* relied on the hourly rates for attorneys as established by the Survey Report despite the Survey Report's failure to take into account reasonable rates in the Eastern District.  *Davis*, 25 F.Supp.3d at 1299. The Court also decided, on public policy grounds, to set the hourly rates according to the market in which the attorneys' firm was located rather than in the market in which the case arose.  *Id.* at 1299-1300.

Survey Report] inapposite for determining hourly rates prevailing in the forum in which this Court sits, *i.e.,* the Eastern District of California, Fresno Division."); *Branco v. Credit Collection Servs.,* No. 2:10–cv–01242–MCE–EFB, 2011 WL 6003877, at *3 (E.D. Cal. Dec. 1, 2011) ("Plaintiff's contention that the rates are reasonable as evidenced by the United States Consumer Law Attorney Fee Survey Report is unavailing because it does not take into account the reasonable rate for attorneys in *this* district."). Even to the extent that *Davis* is applicable, it does not appear to support the hourly rate requested for Mr. Rosenberger. In *Davis*, the Court awarded a consumer rights attorney with ten years' experience an hourly rate of $387, but it awarded the other attorneys with approximately the same amount of experience as Mr. Rosenberger an hourly rate of $290. *Id.* at 1298-1300.

The Court finds it more reasonable to set Mr. Rosenberger's hourly rate at $275.[8] *See, e.g., Felldin v. Grant & Weber, Inc.*, No. 2:15-cv-0891-WBS-AC (TEMP), 2016 WL 3344493, at *6-7 (E.D. Cal. June 16, 2016) (downwardly adjusting hourly rate for an experienced consumer rights litigator from the requested rate of $450 to the awarded rate of $350); *Allmendinger*, 2016 WL 146230, at *5 (awarding hourly rate of $300 "an experienced and able [FDCPA] litigator"); *Mulvihill v. St. Amant & Assocs.*, No. 2:13-cv-0080-TLN-DAD, 2014 WL 1665229, at *4 (E.D. Cal. Apr. 24, 2014) (awarding experienced FDCPA attorney $290 per hour); *Esget v. TCM Financial Servs. LLC*, 2014 WL 258837, at *10 (E.D. Cal. Jan. 23, 2014) ("[H]ourly rates in excess of $300.00 are not the prevailing rate in the Eastern District of California for FDCPA practitioners . . . The Court's review of some of the most recent attorney fee awards in FDCPA cases indicate that the most common hourly rate awarded to plaintiff's counsel in FDCPA cases is $250.") (collecting cases). The issues before the Court are not particularly difficult or novel. Plaintiff's factual contentions were automatically established on default judgment, and those factual allegations fit squarely within the types of conduct prohibited by the FDCPA and Rosenthal Act. *See, e.g., Esget v. TCM Financial Servs. LLC*, 2014 WL 258837, at *10 (E.D. Cal. Jan. 23, 2014) (finding a requested hourly rate of $325 to be excessive because the factual

---

[8] The Court notes that there appear to be no prior cases setting an hourly rate for Mr. Rosenberger. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

contentions were automatically established on default judgment and the facts alleged fit within the purview of conduct prohibited by the FDCPA and Rosenthal Act).

With regard to the hourly rate to be charged for Plaintiff's counsel, Mr. Panvini, Plaintiff requests $275. (Doc. 12, ¶ 8.) Plaintiff asserts that Mr. Panvini "has worked . . . exclusively representing consumers" in FDCPA litigation for approximately eight years. (*Id.*, ¶ 7.) The Court finds such a rate to be reasonable given Mr. Panvini's experience, and recommends that Plaintiff be awarded such an hourly rate for Mr. Panvini. *See*, *e.g.*, *Felldin*, 2016 WL 3344493, at *6-7; *Allmendinger*, 2016 WL 146230, at *5; *Mulvihill*, 2014 WL 1665229, at *4.

Regarding the hourly rate for Paralegals Davis and Landis, the Court finds the requested rate of $135 to be unreasonable in Fresno. Instead, this Court has found $115 per hour for paralegal services to be reasonable in this district. *See*, *e.g.*, *Block v. Christian*, No. 1:16-cv-00650-LJO-SKO, 2017 WL 5248402, at *8 (E.D. Cal. Nov. 13, 2017) (finding $115.00 to be reasonable rate for paralegals); *Singh*, 2017 WL 1831941, at *3 (finding paralegal rates of $95-$115 to be the prevailing rates in Fresno); *Moore v. Watkins*, No. 1:15-cv-00115 JAM-GSA, 2015 WL 5923404, at *6 (E.D. Cal. Oct. 8, 2015) (finding $115 to be reasonable rate for paralegals); *Gutierrez v. Onanion et al.*, No. 1:11-cv-00579-SMS, 2012 WL 1868441, at *2 (E.D. Cal. May 22, 2012) (same); *Delgado v. Mann Bros. Fuel, Inc.*, No. 1:10cv0720 AWI DLB, 2010 WL 5279946, at *4 (same); *but cf. Esget*, 2014 WL 258837, at *10 (finding a paralegal's hourly rate of $130 to be reasonable in an FDCPA case in Fresno). The Court therefore recommends that the hourly rate for Paralegals Davis and Landis be set at $115.

### ii. Time Expended

With regard to the number of hours expended on the case, Plaintiff indicates that Mr. Rosenberger expended 4.6 hours and Mr. Panvini expended 8.4 hours, for a total of 13 hours of attorney time. (Doc. 8, ¶ 13.) Plaintiff further indicates that Paralegal Davis expended 4.1 hours and Paralegal Landis expended 3.8 hours, for a total of 7.9 hours of paralegal time. (*Id.*; *see also* Doc. 12-2.) Plaintiff submitted an itemized billing statement in support of the request. (Doc. 12-2.)

//

The Court finds the amount of time claimed by Plaintiff to be reasonable for many of the tasks listed in the billing statement. (*See* Doc. 12-2.) Plaintiff concedes, however, and the Court agrees, that "certain . . . entries are clerical or duplicative in nature," and, as such, Plaintiff has voluntarily applied an across-the-board deduction of $1,256.50 to the attorney's fees sought. (Doc. 12, ¶ 14.) Given the unreasonable amount of time spent on certain tasks in this case, the Court finds such an across-the-board deduction to be reasonable and recommends adopting it.[9] *See Gonzalez*, 729 F.3d at 1202 ("The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable."); *see also Moore v. Chase*, No. 1:14-cv-01178-SKO, 2016 WL 3648949, at *4 (E.D. Cal. July 7, 2016) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

Accordingly, the Court recommends that Plaintiff be awarded a total of $3,237.00. This amount is comprised of the following: (1) 4.6 hours billed by Mr. Rosenberger multiplied by Mr. Rosenberger's hourly rate of $275, which totals $1,265; (2) 8.4 hours billed by Mr. Panvini multiplied by Mr. Panvini's hourly rate of $275, which totals $2,310; (3) 4.1 hours billed by Paralegal Davis multiplied by the paralegal hourly rate of $115, which totals $471.50; (4) 3.8 hours billed by Paralegal Landis multiplied by the paralegal hourly rate of $115, which totals $437; and (4) an across-the-board deduction of $1,256.50 for time unreasonably spent on certain tasks.

### c. Costs

With regard to costs and litigation expenses, Plaintiff seeks an award of $510.00. (Doc. 8, ¶ 9.) This amount includes the $400 filing fee and the cost for service by a private process server. The Court finds that these costs are reasonable.

//

//

---

[9] The Court finds, for instance, that Plaintiff's attorneys unreasonably expended 0.40 hours (24 minutes) reviewing the Court's Order to Supplement the Record and reviewing "answer, deadline." (*See* Doc. 12-2 at 1-2); *see also Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary); *Trujillo v. Ali*, No. 1:16-cv-00694-LJO-SKO, 2016 WL 6902313, at *6 (E.D. Cal. Nov. 23, 2016) (reducing the time billed for similar activities reviewing short Court orders to 0.50 hours). The Court also finds that 0.30 hours (18 minutes) expended on unanswered phone calls was unreasonable and purely clerical. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

**D.    Conclusion**

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Elliot Rosenberger, Esq. | $275 | 4.6 | $1,265.00 |
| Joseph Panvini, Esq. | $275 | 8.4 | $2,310.00 |
| Tremain Davis, paralegal | $115 | 4.1 | $471.50 |
| Zac Landis, paralegal | $115 | 3.8 | $437.00 |
| | | **Fees** | $4,483.50 |
| | | **Deduction** | - $1,256.50 |
| | | **Total Fees** | $3,227.00 |

Additionally, the Court recommends that Plaintiff be awarded $510.00 in litigation expenses and costs.  Thus, the total award of fees and costs recommended is $3,737.00.

## IV.    RECOMMENDATIONS

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1.    Plaintiff's Motion for Entry of Default Judgment (Doc. 8) be GRANTED;

2.    Judgment be entered in Plaintiff's favor and against Defendant Grant Mercantile Agency, Inc.;

3.    Plaintiff be awarded statutory damages under 15 U.S.C. § 1692k(a)(2)(A) in the amount of $600.00;

4.    Plaintiff be awarded statutory damages under Cal. Civ. Code § 1788.30(b) in the amount of $600.00; and

5.    Plaintiff be awarded reasonable attorney's fees in the amount of $3,227.00 (13 hours at $275 per hour for attorney's fees, 7.9 hours at $115 for paralegal fees, less $1,256.50 in across-the-board deduction), and costs of suit in the amount of $510.00, for a total of $3,737.00.

//

1    Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to

2   Defendant Grant Mercantile Agency, Inc. at its last known address.

3    These findings and recommendations are submitted to the district judge assigned to this

4   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one

5   (21) days of service of this recommendation, any party may file written objections to these

6   findings and recommendations with the Court and serve a copy on all parties.  Such a document

7   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

8   district judge will review the magistrate judge's findings and recommendations pursuant to

9   28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to file objections within the

10  specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*,

11  772 F.3d 834, 839 (9th Cir. 2014).

12

13  IT IS SO ORDERED.

14  Dated:   **December 26, 2017**                    /s/ *Sheila K. Oberto*

15                                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28